Case numbers 21-5054 and 21-5133 Martin J Walsh v. KDE Equine LLC et al. Oral arguments not to exceed 15 minutes per side. Counsel for the appellate, you may proceed. Thank you. Does the court mind if we take off the mask? Not at all. Thank you. May it please the court, I've asked to reserve six minutes of rebuttal time for the cross-appeal, please. You may. Thank you. May it please the court, I'm Biliki Moflira for the appellate, KDE and Stevens Mewson. To borrow from Justice Scalia, this case is about power. Specifically, it's about who has the power to say what the law is when the statute and its ordinary meaning on the one hand says one thing and extra textual considerations from an agency say another. By its ordinary meaning, Section 207 of the Fair Labor Standards Act allows an employer, like us, to pay its non-exempt employees a salary that includes minimum wage and overtime. Can I ask you, the government argues that you forfeited this argument. As you just pointed out so thoughtfully and eloquently, Justice Scalia for a long time believed in this argument. So, your argument to me seems to predate the cases you cite. In other words, Bostick, Kaiser et al. Why isn't it forfeited? Like, the two of us love this argument. We encourage lawyers to make it all the time. Well, I think, if I may. I think I speak for Judge Larson. If I may. In part, because I think first in this circuit, as we noticed in researching this matter, this argument hasn't been made in this circuit to begin with. And then second of all. What argument? This specific to 207-F? Or the argument that the text should control over any interpretive regulation? Well, I think first beginning with the 207-F argument. Beginning with that. And then beyond that. You could have made that below, right? You could have said, look, Judge. The text here controls. And you don't need to look at what the agency says because it's crystal clear. And we win under our interpretation of the text. As you're doing in front of us. And you even cite, I think, a 1942 Supreme Court case in furtherance of that. Well, the Beller case, yes. It was the 42 case. But I think since Beller was codified by Congress, we haven't had that many cases test what its outer limits are. And then second to that. When we were going into this case, the Secretary has enacted a very overwhelming body of interpretive body of law. Which before we went to trial, I think there was a reflexive attitude towards deference to the Secretary's position. So yes, probably maybe not a binding rule per se. But it is one that courts reflexively would have deferred to anyway. Meaning we would have lost. But since we actually submitted the case for trial, there's been a sea change in how courts, at least federal courts, are supposed to approach this question. So we contend that our trifecta is essentially a three-legged stool. And in the sense that you start off, of course- You, before the court, because the court took a year, right, to issue its decision. Am I right about that? Like it was in 2000, a year after. That is correct. And in between that, both Bostick and Kaiser came out, right? Yes, they did. So did you bring them to the court's attention as you would do in front of us with a 28-J letter? In front of them with a motion for the court to pay attention to Bostick and Kaiser and consider the text as the preeminent source of interpretation? Well, to be perfectly honest, I think it was really- saying that they were talking about deference towards agency regulations. But then, of course, if you look at the record, for example, in document number 74, page 19 of the district court, the district court intimated at that point that it thought that our deference applied to these interpretive bulletins. And then when we go to trial, the district court then is of the view that maybe we're dealing with skid more deference. And then once you have Kaiser come down- Do you agree it's skid more? Sorry? Do you agree it's skid more? We think it's skid more. But I think what we think also, in addition to that, is that when you look at what Justice Gorsuch says, that yes, it's skid more. But I think what Kaiser meant to remind the courts is that really, the court really has to exercise independent judgment. And I think- I think it's a reminder of a principle that already existed rather than a new argument. It's just not clear to me why you couldn't have argued to the district court, I mean, based on a case like MCI versus AT&T, which I think was 1992 or 1993. Well, I think the position with that is that if we think that the law wasn't entirely clear, that it was necessary for the Supreme Court to take Kaiser just to make that point clear. Because if it was already so clear, then it would have been a redundant act for the court to take Kaiser and have so many fragmented opinions about exactly why it's necessary to clarify the law. And even as the court would read Kaiser itself, it is not a thing of mere clarity. It is not. I mean- Didn't Justice Kagan and Kaiser- Didn't she write Kaiser? Didn't Justice- I think she did, right? She did. She wrote part of it. She wrote the first part, which is the Part A and Part 2 B. OK. But then Part A, the chief refused to join. And so- You've got a good memory. Can I ask you, didn't Justice Kagan say, though, that we're not doing anything different? Well, she said that in Part A, which that didn't actually command the majority of the court. And so in that instance, then, I don't know if we're performing a Marx versus United States analysis, whether the chiefs- I hope you're going to save us from Marx right now and explain- I think we would, because- Although she's the expert, so she can write the opinion, then. So it comes down to it, when we get, finally, when we get Bostock, Bostock for us stands out for two things. One is the way that the textualist analysis is being performed. Now, you don't have to accept my word for it to say that it's different. But you have other eminent voices dissenting and saying that this is- Right, but the dissents don't control. And Justice Gorsuch says he's doing nothing different in Bostock. Well, but his colleagues, esteemed colleagues, who I am not qualified to second-guess, would suggest that he's doing something different. I know, but we're bound by the majority. Yes, true. But as we pointed out, too, but in trying to understand the contours of exactly what the court is trying to say, it's been recommended practice. The court itself does it, Justice Thomas has highlighted it, and a few other eminent people, that we look at what the dissents are actually also saying, because that helps our understanding. Go ahead. Can we move for a minute to your good faith? I just want to move us to the next arguments, if that's all right. Is that okay? Yes. Great. So on your good faith and your willfulness argument, use sort of the same evidence to support both. And one is that you hired Mr. Belanto as an FLSA compliance expert. But hadn't he been handling the payroll since 2004? So I'm not quite sure how, I mean, it doesn't even sound like you brought him on. He was already on. So how does that demonstrate your good faith? Well, I think that when you look at the record, Belanto initially in 2004 comes in, and all he's doing at that point is the payroll. Then we have the problems, and then, of course, he takes the lead in dealing with the Department of Labor in New York. And if you look at the record- But you didn't hire him then later as a result of this. You just had him take on more duties. More duties specific to helping us with compliance. And so when you look at the record at 3456 all the way through 3457, what you notice is he says that he goes to the Department of Labor office, consults with the Labor office as to how we need to be complying with the statute. In fact, they say that the team from the DOL comes to our premises, and then they look at what we're doing, and then they tell them, yes, we're happy with what you're doing, and we'll resolve the case. Can I ask you one other question about the good faith? And this is what I'm struggling with. So the district court, I know it's in the willfulness section, I think, if I remember correctly, says at most this amounts to mere negligence. So that's in the willfulness section, okay? What you did post, because the government hangs its hat on that in 2013, or I think it's 2013, they found a violation in New York. And you should know better. And so everything you do subsequently is willful. And the district court says, no, no, no, it's not willful. At most, it's mere negligence. We said in a footnote in Elwell that mere negligence, that good faith is an objective standard, and that negligence is objective. So why wouldn't the fact that he found negligence help you on the willfulness, so on the statute of limitations question, but not help you on the liquidated damages, which is the good faith question? Oh, two points. I see that I'm out of time. You can respond. I'm sorry to go. I took you over. Okay. I think first things first. I think when you read document 74, we understand the district court to have made two important points. One was that it found that we were not willfully violative of the statute because we had made improvements in our FLSA activity. And then in addition to that, since we're actually on appeal defending a correct judgment that we contend is correct, the record also does support that there was good faith reliance on Belanto's expertise and also the representations of the Department of Labor as to our compliance. And then subsequent to that, the district court said, and I quote, even if, and we argue in the third brief, that that contingent phrase does not actually amount to a finding. Really, it's the first point that actually is a finding. And that's even buttressed when you look into after we have the trial. If you go to document 130 in the record. But can I ask you, because so I understand what you're saying. It's a great argument, and your memory is fantastic, and it does say even if. But we have to view it in the light most favorable to the government on summary judgment. And so when I view, he's saying, even if these affirmative actions are not sufficient under certain provisions of the FLSA, right? Such insufficiencies would amount to, at most, mere negligence. I mean, the district court's saying, OK, even if can also be turned into viewing it in the light most favorable to the plaintiff. They are nothing more than mere negligence. And that, to me, would say, I agree with you on the willfulness. You'd still win. But on the liquidated damages, that would say trial. Right. To respond to that point, I think already with what I've already said about what the record contains. I think what is also important to factor in is this additional point that we're raising about the good faith reliance on Belanto's representation receives. The reason why that matters is because it takes us into... Was that argument made below to the district court? It wasn't. But the reason why we think we can make that is because this court in Sequoia versus Tennessee Valley, a case from 1980, at page 1166, it says this, and I quote, when we're looking at a judgment... Sorry. Yeah, we can affirm on any... Yes. But what is important, though, is this part which is different that the government really takes issue with. The grounds for our decision are supported by the record, and the parties have fully briefed and argued these grounds. So the fact that this point is already in the record and is in the appellate briefing, that is sufficient for this court to look at. Okay. All right. Any further questions? All right. Thank you. You'll have your full rebuttal time. Thank you. Okay. You're welcome to proceed. Thank you. And you're welcome to leave your mask on if you want. I'll try and argue as long as we can hear you. That's okay. I'm sure you wouldn't be able to understand me. Um, thank you. Shall I begin? Yes, I'm sorry. Good afternoon, your honors, and may it please the court. My name is Heather Maria Johnson, representing the U.S. Department of Labor. Having lost below, defendants now seek another bite of the apple and raise yet another post hoc justification for their pay practices, specifically that these fall within the statutory exemption for so-called BELO plans found at section 7f of the FLSA. Neither change in law nor exceptional circumstances excuse defendant's failure to raise this argument below. Moreover, it fails on its merits. Before turning to the issues of liquidated damages and willfulness, I'd like to clarify a couple points made by defendant's counsel in his argument. Um, first, um, we're looking at the regs that defendants cite as the reason they could not bring this argument below are interpretive regulations. They were subject to Skidmore deference before Kaiser. They're subject to Skidmore deference after Kaiser. And while we can certainly debate the extent to which Kaiser changed the level of deference appropriate under our, it didn't change the basic level of deference due under Skidmore, which is the power to persuade. Also, defendants stated that the district coordinate summary judgment decision seems to have applied our deference. It was applying our deference not to these particular regulations, um, but to the department's field operation handbook, which is an interpretation of its regulations. Um, so that, that's a separate issue. Um, uh, in addition, even if this court, uh, is to consider the 207-F argument, it fails on its merits. Um, if the court would like me to get into the details of that, I'm happy to do that. But if you would rather focus on other things. I just have one. Sure. No, go. Which is, so if we were to get there, what is your best argument that irregular hours means that you must work more or less than 40 hours a week? That is, why are we counting the regular hours in addition to the overtime hours? Um, yes, your honor. Um, when the department, um, drafted its regulations, um, specifically, uh, part 778, uh, .405 and .406, it did so based on case law interpreting, um, BELO plans. And it cites in its regulations several cases, um, in which courts had found there needed to be more significant variation, not only in the overtime range, but also in the regular range. And the reason is because, um, the Supreme Court carved out an exception in BELO, um, based on a quid pro quo, so to speak, um, where employees, uh, benefited because in, um, in certain weeks they otherwise would not have made much of their salary. Um, and so courts that had interpreted that, um, interpreted that to mean there needed to be, um, variation, again, not only in the overtime hours, but in the regular hours. Um, and specifically, I would like to draw the court's attention to a Second Circuit case, um, Utica, or excuse me, um, I think it's McComb versus Unica knitting. Um, and this is a 1947 case looking at, um, BELO and some of the subsequent precedent and making sense of what was required in a BELO plan. And, uh, that court looked back at the record to figure out what percentage of time, um, the, the BELO employees worked that was less than the statutory max at that point, and found that it was about 18%. Can I, can I move, yeah, can I move to willfulness? Because this is the area I'm struggling with. Of course. And so it seems to me after you all enter into the, it was a consent judgment, right? Then you, your own investigator, right, says they're under the power of the consent judgment, the employer has come into compliance. Um, I think that, I would say that is taken out of context, Your Honor. If you look at the entire document, this is an internal, um, uh, case file. Did he say they came into compliance? The investigator did include a sentence saying they came into compliance. Um, it also said they have an accurate timekeeping system, um, for paying time and a half. Yet they didn't actually start using those time sheets for more than a year after that final conference. Let me, let me just, so they came into compliance according to your investigator? Actually, no. The investigator included that sentence. If you look two pages later, um, the investigator goes on to state what was discussed in the final conference, um, so that's at page ID 4102. And then, um, at 4104, I believe, um, no, 4103, she goes on to say that they have come into compliance under the power of the consent judgment, and it is anticipated that the employer will continue to comply. Okay, so they anticipated, they thought they'd come into compliance, they anticipated they would continue to apply. The employer, everyone agrees, made efforts to comply, whether they were sufficient or not, it's a different question, but they made efforts to comply, including putting up the signs, doing all the other stuff. Below, you argue that at R61, which is your motion, that their failure to comply with the consent judgment is evidence of willfulness. Explain, go ahead, no, no, go ahead and explain to me how that can be the case. Because it could be evidence of anything, it could be negligent, it could be, it's not evidence of willfulness. Um, it could be evidence of willfulness, it does not have to be evidence of willfulness. So then why does the district court have to accept it? Um, so, I guess, I have a couple responses to that, your honor. First, um, remember that we're at summary judgment for these issues. I understand, but just viewing their non-compliance, willfulness is a tough standard, it's a lot different than negligence. Viewing some mistakes in compliance, it's not a strict liability standard. Viewing it that there's mistakes made after the consent judgment, coupled with all these other things, like this statement, other things, how can a district judge, I just don't understand how a district judge could conclude at that point, that even viewing the evidence in the light most favorable to you, it's willful on their behalf. Um, yes, your honor. So, um, it's important to remember that the consent judgment here ordered them to comply with the same provisions that are at issue here, the overtime provision and the record keeping provision. And, um, specifically, we, and you agree, right, even you conceded below, at least, that they did take steps. They weren't sufficient, but they did take steps. That's undisputed. That, they did not take reasonable steps, your honor, but yes, they did take steps. So that sounds like negligence, but they didn't, they didn't take reasonable steps. They did not take reasonable steps. There's no evidence of maliciousness. Well, I, I disagree, your honor. Okay, so if there is, I want you to do two things. Tell me what it is and show me where you pointed it out to the district court. Okay. Um, so, so, um, specifically, um, the, the fact that the employer failed to keep any records of hours worked, um, in 2013, excuse me, in 2013 up until the beginning of 2014, um, even though they had been told, not only were they ordered to comply with the record keeping requirements, which is essential for overtime compliance, you can't, you cannot comply with overtime unless you're keeping track of the hours worked. Um, so not only did they not bother to keep any timesheets for nearly a year after the you look at the date of the final conference, um, which is the conversation between wage an hour and the employer in October, 2012, um, they also then kept. Let me ask you, that's a great argument. Okay. Where was it made to the district court? Um. Because at R61, I'll show you where it's. Sure. The argument that it's willful starts at page ID 417. And honestly, if I'm a district judge reading this, who's a lot busier than us, I mean, I don't see a lot. Um, it's two pages. I agree. It could have been more fulsome, um, but that, that would be, that would be a reason not to grant summary judgment to either side, your honor, and instead leave this for the burden, like good faith. I think you, you may have a legitimate argument. Willfulness, the burdens, because the burdens on them, as you point out, right? Yes. Willfulness, the burdens on you. And I get what you said in your brief about summary judgment. I'm trying to view this in the light most favorable. But if I'm, I'm just trying to put myself in the district judge's spot. And this is what I get. And I've got to have evidence, right? The rule is from our circuit is you've got to point to evidence from which a district court, when viewing that evidence in the light most favorable to you, can demonstrate willfulness. Yes. And so, your honor, um, we included, um, at summary judgment, numerous records showing, um, well, first it's undisputed that they didn't keep records. Okay, but where do, where do you make the argument that a judge isn't a pig hunting for truffles. They don't need to go through all the evidence there. They need to look at what you argue. They're busy. They got trials and everything else. Look at what you argue and say, okay, there it is. They pointed me to the evidence from which I can make this conclusion. Um, well, you know, I'm sorry. I don't have that particular brief in front of me. I can get back to you. You want me to read you the whole section? It won't take long. Um, I would rather not use three minutes on that. But, um, I will say we did include evidence that you agree that if you didn't make the argument you're making now in that section that you lose. I believe we did make the argument below and I don't think we lose. I can go through the other genuine issues of material fact that were made that you made to the district court on willfulness. I believe we did make them. Okay. Um, we, we, we stated that they kept, um, records that were highly inaccurate. The district court found at summary judgment that there were multiple insistencies, um, from that. Also, it was undisputed that the, um, they did not include the hours worked for the extra tasks, even once they started keeping time records in 2014, and that these time records did not match their payroll records. From those pieces of evidence, a finder of fact could determine, um, that this was a knowing failure to keep records, particularly since they had been joined, excuse me, had been enjoined to do so, um, and that this knowing failure to keep records was intended to conceal their overtime violations. Um, and so that, um, that would tend, that could tend to show, um, a willful violation, um, of the overtime requirement. Um, additionally, I would like to note that, um, this court's precedent, um, says, and particularly Elwell, there are some other decisions as well, um, makes the point that, um, when there is a prior investigation, um, it can show that subsequent violations are willful, and specifically... I think this is a really bad case, Your Honor. They, um, they were enjoined to keep records. This is a case where they kept no records of hours worked, which is the fundamental thing you need to do to comply with overtime. After being enjoined by the court to do so, they did not keep records, and they continued to not pay overtime. Um, and the only steps they took were to, um, design timesheets, which they apparently did show to the Department of Labor, but then did not use for nearly a year, and, um, to post timesheets, and Belanto, I believe, testifies that they, quote-unquote, tightened existing practices up. Um, but they did not make meaningful changes, um, that would, um, either show reasonable action for the purposes of liquidated damages, or, um, this evidence would also demonstrate at a minimum reckless disregard for the overtime requirements. So you're saying it's the timesheets, not the payroll records, that are the linchpin here for the willfulness? Um, I'm not quite sure I understand the distinction. Um, the timesheets did not match the payroll records. No, I get that. Which is evidence that the timesheets. But they had, right, they had eight, didn't they have eight employees testify, tell me if I'm wrong, that the payroll records were accurate? They may have testified that they were accurate, but that, may I continue? Yeah. Um, but the district court, um, found multiple inconsistencies between them, just looking at one set of records. Um, at the bench trial, the district court found that they, the differences were, um, so extensive that the time records were, could not be seen as reliable at all. Um, and at that point, um, Steve Asmussen, uh, also testified that he wouldn't be surprised if the timesheets were never accurate. Um, so, I mean, these are really egregious violations, Your Honor. Okay. Any further questions? Thank you very much, counsel. Thank you. Hey, please, the court. I, I mean no discourtesy to my learned friend opposing, uh, but we think their argument on the willfulness comes really close to repudiating McLaughlin versus Richmond Shoe. And I read, uh, at, uh, page 135 of the U.S. report, there's a quote that I wanted to hum a home, if an employer acts reasonably in determining its legal obligation, and I add a word, it's, and I quote again, its action cannot be deemed willful. And then you see it again on page 133. Can I ask you, though, what they're saying is by not keeping timesheets, that demonstrates at least there's evidence you were willful because they couldn't check the accuracy of your payroll records. Well, I think that there are two points about that. I think first and foremost is the fact that, uh, with the record that they made, I mean, everybody is unfortunately stuck with the record that they have. And if you look at what the department really presented, it essentially amounts to, well, there's a prior violation, and then we allege that there's a violation again. So therefore, it must be that you've done this willfully. That's as far as we were able to understand their brief. But the district court found there was evidence of violations again. Well, yes, that is true. But then also Elwell in there, uh, I believe also does talk about the fact that, well, just records alone should not be categorically evidence of the fact that there's a willful violation. And I think the element that the court really alluded to is if there's a missing record, and then there's an intent to conceal. If you go back to the case that the secretary pled, and the notice that they gave us in the case they were presenting, there wasn't this aspect of concealing records. If anything, it was that maybe we've fallen short. That's what they were alleging. So the fact that they've come up. Well, but what's the line between sort of ginning up some timesheets that are kind of, you know, that everybody's just filling in what their schedule is as opposed to filling in their actual hours worked? I mean, what's the difference between that and a concealment? So you're presenting what I think the secretary would say is basically a bogus piece of paper as opposed to just hiding a real piece of paper. What's the difference? I think it's the knowing element, Your Honor. It's the fact that you deliberately set out to present a false picture. Whereas in this... Couldn't somebody, a reasonable fact finder, infer that you were ginning up the timesheets? Actually, we think that the court needs to hold them to evidence, Your Honor. The fact is, nobody... They don't need an admission from you for... No, they don't. Yes, that is true. We're talking about inferences. How come... Yes, but I... Sorry, Your Honor. No, go ahead. Yes. I think what we saw from the record that was actually built up was the fact that we actually, and the district court actually did credit this, that the record shows that the errors that we had, the aberrational entries and so on, or the mistakes that were happening, is more to do with the idea that maybe our workers had more challenges in trying to comprehend what they were supposed to be doing. But there was certainly no inference raised and no evidence produced by our learned friends suggesting that we were engaging in essentially fraud, because that's what they're saying in a roundabout way. And so if we hold them to the record that they developed, sure, after the fact, everybody knows better. But the fact that the wisdom has come to the secretary now does not mean that they get the benefit from that. We need to hold them to the record that they had and the burden that they should have discharged, which they did not. So weren't they arguing that you were, I thought at their motion, they at least argued that you concealed the accurate time with your payroll records. With respect, your honor, I thought when they came back in their rejoinder, in their reply brief after 61, in their reply brief, we understood them. And of course, I'm apt to be wrong anyway, but we understood them to be saying that really the main problem is the fact that we just aren't setting straight after being told to set straight. And so that's the reason why we should be found willful. And if that's the correct understanding of what that reply brief from the secretary said, then they did meet their burden. And with that, I'd like to see if I could pivot the court's attention back to the point that I made earlier. We think that Judge Lawson, the court needs to reach the questions that were presented in our lead brief about the 2 or 7F argument. We approached this question on the point that there were two ways the court could reach that. One was as a matter of course, because maybe if the court is inclined to accept that maybe Niaz Chavez and Garland and all those other cases add something new to our understanding, then maybe the court needs to take up that issue. But in case the court thinks that maybe it did not, then under the penny dock doctrine in this circuit, we contend that we've met all the requirements for this court to consider this 2 or 7F argument. Because if you think of what 2 or 7 requires, it requires a salary. Nobody disputes that that's there. It requires a base rate that is purportedly being paid that covers minimum wage and overtime. The record also shows that. And just to be clear, Bellow at page 631, the Supreme Court said that it is the fact that the employer purported to actually use that particular salary arrangement that was sufficient. And then this third requirement being this aspect of there being an agreement on understanding that this is how the employees are going to be paid. And we contend that our first brief at page ID 28 actually outlines undisputed evidence from the trial record that all the eight employees said they understood. And then finally, these workers worked fluctuating hours. And this question, we also cited a case law that says that there's a need for guidance in this circuit. The district court, we cited a case that district court in this circuit says this court needs to elucidate what the standard is for irregular hours. So it's beyond just our own personal interest in getting a reversal. But it's the fact that the record supports it. There isn't a need for additional fact finding. And the law supports it straightforwardly. Thank you. Thank you, counsel. Any other? All right. Thank you both, counsel, for your very thoughtful arguments. The case will be submitted. And I don't think we have any other cases. Again, Judge Donald regrets that she couldn't be here. But I'm sure she's going to enjoy listening to your thoughtful arguments. And we will get the opinion out in due course. Have a nice day and a happy holidays.